COBB v. COMMISSIONER OF INTERNAL REVENUE.

No. 10759.

United States Court of Appeals Sixth Circuit.

April 4, 1949.

W. Dean Hopkins, of Cleveland, Ohio, and John Y. Merrell, of Washington, D. C. (Robert Ash and W. T. Durant, both of Washington, D. C., on the brief), for petitioner.

Howard P. Locke, of Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack and

712

Helen Goodner, all of Washington, D. C., on the brief), for respondent.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The question presented by this petition for review is whether, in the circumstances of the case, the petitioner may deduct from his gross income attorneys' fees paid by him in the taxable year for professional services and advice in relation to a controversy concerning the amount of his liability for gift taxes. The Tax Court of the United States, three judges dissenting, held that such attorneys' fees are not deductible by petitioner under section 23(a) (2) of the Internal Revenue Code, 26 U.S.C.A. § 23 (a) (2). No appellate court of the United States has yet decided this clear-cut issue of law.

The case was tried on stipulation of fact and the testimony of the petitioner, Frank M. Cobb, a lawyer employed by a Cleveland corporation as general counsel, who received $10,416 for his professional services during 1944, the taxable year involved. His additional net income for that year was $16,380.32 from real estate rentals, and $10,790.25 from dividends and interest. Owning at the time an undivided one-half interest in improved income-producing real estate at 234–236 Euclid Avenue, Cleveland, he conveyed on or about December 1, 1941, by fee simple deed of gift to each of his four daughters an undivided one-twelfth interest in the property. He made to his wife a gift of securities, which he considered of approximately the same value as the gifts to his daughters. All four of his daughters were married. Two of the husbands were hospital internes, one a young lawyer, and the fourth a young man of promise without much income. Petitioner testified that his motive in making the gifts to his daughters was to aid them in the "maintenance of their homes," and to help himself by effecting reductions in his income taxes by "getting into lower brackets." During 1941, the gross rental of the real estate, in which he conveyed a one-twelfth undivided interest to each of his daughters in December of that year, amounted to $33,500.

Petitioner stated on the witness stand that, before he made the gifts to his daughters, his niece, who owned a one-eighteenth interest in the Euclid Avenue property, died, bringing into question the value of the fractional interests in the property. A law firm representing the administrator of his niece's estate held numerous conferences with a representative of the Commissioner of Internal Revenue. Realizing that the value of the undivided interests in the property would be important in relation to his gift taxes, petitioner consulted the same law firm for advice as to what value he should place on the interests conveyed to his daughters. In his gift tax return he listed the gifts to his daughters and other gifts, and paid a gift tax amounting to $18,943.65.

On July 29, 1942, the Internal Revenue Agent in charge at Cleveland proposed by letter to petitioner an adjustment of his gift tax liability for 1941 which would result in a gift tax deficiency of $13,840.52. In early August, the taxpayer employed the same attorneys to advise him as to whether he should accept or reject the proposed adjustment, and to protect his interest in the gift tax matter. These lawyers prepared and filed a protest against the proposed adjustment.

On November 23, 1942, the Commissioner of Internal Revenue formally notified petitioner that a determination of his gift tax liability for 1941 disclosed a deficiency of $13,840.52. At petitioner's request, his attorneys prepared and filed in the Tax Court of the United States a petition for redetermination of such deficiency. After petitioner's attorneys had prepared for trial before the Tax Court, a compromise settlement was reached; and, on December 14, 1943, the Tax Court, pursuant to stipulation of the parties, found a deficiency in petitioner's gift tax in the amount of $6,000, which, together with interest, was promptly paid.

The Tax Court found that petitioner paid his attorneys $2,260 as fees for their professional services in connection with the gift tax dispute, and that such amount was reasonable for the services rendered. The Court found further that, in order to pay the 1941 gift tax deficiency of $6,000, the

petitioner sold at a loss income-producing securities; and that if petitioner had been required to pay the original deficiency of $13,840.52 determined by the Commissioner it would have been necessary for the taxpayer to sell additional income-producing securities.

The decision of the Tax Court was based upon literal interpretation of the language of the statute applying to allowable deductions from gross income in the computation of net income. Section 23(a) (2) of the Internal Revenue Code provides: "Deductions from gross income. In computing net income there shall be allowed as deductions: * . * * (2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held· for the production of income." There is no statute allowing deductions from gross income of attorneys' fees and services rendered in relation to advice or litigation in respect of *gift taxes*. If petitioner is entitled to his claimed allowance for such attorneys' fees, concededly he must establish his right under the above quoted section.

The Tax Court held that the law is correctly stated in Treasury Regulation 111, section 29.23(a)-15(b), as amended by T.D. 5513, which provides:" "Expenses paid or incurred by an individual in the determination of liability for taxes upon his income are deductible. If property is held by an individual for the production of income, amounts expended in determining a property tax imposed with respect to such property during the period when so held are deductible. Expenses paid or incurred by an individual in determining or contesting any liability asserted against him do not become deductible, however, by reason of the fact that property held by him for the production of income may be required to be used or sold for the purpose of satisfying such liability. *Thus, expenses paid or incurred by an individual in the determination of gift tax liability, except to the extent that such expenses are allocable to interest on a refund of gift taxes, are not deductible,* *even though property held by him for the production of income must be sold to satisfy an assessment for such tax liability* or even though, in event of a claim for refund, the amount received will be held by him for the production of income." [Italics supplied.]

The petitioner contends that the attorneys' fees in question are deductible under section 23(a) (2), because (1) such expenditure was made to conserve his income-producing property by defending it against the claim and lien of the gift tax deficiency, and (2) the expenditure was a proximate result of his action in making gifts to conserve his income-producing property and to aid in the production of income.

He insists that his position is supported by the authoritative interpretation of section 23(a) (2) in the opinion of Chief Justice Stone in Trust under the Will of Bingham et al. v. Commissioner of Internal Revenue, 325 U.S. 365, 373–376, 65 S.Ct. 1232, 1237, 89 L.Ed. 1670, 163 A.L.R. 1175. In that case, the Supreme Court held that there was no error of law in the determination by the Tax Court that attorneys' fees and expenses incurred by trustees in contesting an *income tax* deficiency assessment and in winding up the trust after its expiration were deductible under section 23(a) (2) of the Internal Revenue Code as expenses for the management of property held for the production of income, and that reversal of the decision of the Tax Court by the Circuit Court of Appeals was unwarranted.

·It was pointed out that section 23(a) (2) provides for two classes of deductions, namely, expenses for the production of income and expenses of "management, conservation, or maintenance of property held for the production of income." The opinion stated: "To read this section as requiring that expenses be paid for the production of income in order to be deductible, is to make unnecessary and to read out of the section the provision for the deduction of expenses of management of property held for the production of income. There is no warrant for such a construction. Section 23(a)· (2) is comparable and in pari materia with § 23(a) (1), authorizing the deduction of business or trade expenses. Such ex-

penses need not relate directly to the production of income for the business. It is enough that the expense, if 'ordinary and necessary,' is directly connected with or proximately results from the conduct of the business [citing Kornhauser v. United States, 276 U.S. 145, 152, 153, 48 S.Ct. 219, 72 L.Ed. 505; Commissioner v. Heininger, 320 U.S. 467, 470, 471, 64 S.Ct. 249, 88 L.Ed. 171]. The effect of section 23(a) (2) was to provide for a class of non-business deductions coextensive with the business deductions allowed by § 23(a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income."

Costs of distribution by the trustees were considered quite as much expenses of management of the trust property as were expenses incurred in producing the trust income. Moreover, the Supreme Court held that section 23(a) (2) does not restrict deductions to litigation expenses which produce income, but applies with equal force to expenses of contesting an income tax deficiency assessment. The opinion asserted: "The Tax Court could find as a matter of fact, as it did, that the expenses of contesting the income taxes were a proximate result of the holding of the property for income. And we can not say, as a matter of law, that such expenses are any less deductible than expenses of suits to recover income." Consult two opinions of the Court of Appeals for the Second Circuit, Stoddard v. Commissioner of Internal Revenue, 152 F.2d 445, and Williams v. McGowan, 152 F.2d 570, 162 A.L.R. 1036, applying the doctrine of the Bingham case, supra. In Dunitz v. Commissioner of Internal Revenue, 6 Cir., 167 F.2d 223, cited by the petitioner, this court affirmed the decision of the Tax Court; but no issue concerning the deductibility of attorneys' fees was presented to us for decision.

■ In the Bingham case, the trustee was bound to the duty of managing and distributing the trust property. Here, the taxpayer made voluntary personal gifts of a part of his own property to his daughters. These gifts were not distributions which he was compelled to make. Nor were they essential to the "management, conservation, or maintenance of property held for the production of income." Certainly, the expense appertaining to making the gifts does not fall within the category of "ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income."

We find nowhere in the opinion of the Supreme Court in the Bingham case an intimation that would sustain the argument of petitioner that the attorneys' fees incurred in procuring a settlement of his liability for gift taxes, and thus avoiding tax liens and putative forced sale or sacrifice of additional income-producing properties, constitute deductible expenses under section 23(a) (2) of the Internal Revenue Code. Nor does the argument stand upon logical ground. Its acceptance could lead to the absurd result that law fees and expenses incurred in defending any type of litigation, say for example a tort action, would be deductible inasmuch as a judgment rendered against the taxpayer would become a lien upon his income-producing property. Such, of course, was not the intention of Congress as revealed in any of its Acts.

■ The true criterion would seem to be that, to become deductible under the statute, the expense must be in proximate relation to the production or collection of income or to the care and conservation of property held to produce it. The paring of the deficiency in the taxpayer's gift tax through the efforts of his attorneys was beneficial to him, in that he was not forced to sell other income-producing property, but the expense to that end is not appropriately classifiable as an expense directly incurred in conserving such property. The opinion in the Bingham case declares that section 23(a) (2) is in pari materia with section 23(a) (1), permitting the deduction of ordinary and necessary expenses *directly connected with or approximately resultant from the conduct of the business,* and that section 23 (a) (2) provides for a class of coextensive non-business deductions, except that the expenses need not be incurred in a business but only in the production of income or in the conservation or management of property held for the production of income. We

are unable to adopt the impractical concept that giving away property produces income to the donor, or constitutes either management or conservation of the property.

The petitioner says that his argument is not that he gave away a part of his property to *reduce income,* but rather to *reduce income taxes* on his family, and thus to increase the amount of property and income available for the benefit of his family and himself. It is obvious that this is specious argument. In respect of allowable deductions and taxable income, a father and his daughters are not to be treated as a taxable unit. Only husbands and wives may by appropriate returns be so constituted. See sections 301 and 303 of the Revenue Act of 1948, Public Law 471, 80th Cong., 2d session, 26 U.S.C.A. §§ 12(d), 51(b).

Ours is not a legislative function. To the best of our ability and understanding, we must construe and apply the Acts of Congress as we read them. And so, though it might seem just to permit a taxpayer to deduct from his gross income attorneys' fees paid by him in connection with the settlement of a gift tax liability, we find no warrant in the relevant statute for allowing the deduction here claimed by the petitioner.

The decision of the Tax Court is affirmed.